## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE MARQUEZ,

       Plaintiff,

v.                                                                  No. 1:24-cv-00423-KG-JMR

AMBER BAKER-CHAVEZ, *et al.*,

       Defendants.

### ORDER GRANTING STATE DEFENDANTS' MOTION TO DISMISS

This case arises from events occurring in conjunction with child custody proceedings in state court. *See* Fifth Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, Doc. 110, filed January 31, 2025 ("Fifth Amended Complaint").[1] *Pro se* Plaintiff asserts claims against several state officials including judges, judicial employees and case workers, the Children, Youth and Families Department ("CYFD") and the State of New Mexico (collectively "the State Defendants") and against Albuquerque Public Schools and several private individuals and entities. *See* Fifth Amended Complaint at 1 (naming 25 Defendants).

Plaintiff asserts five claims pursuant to federal law:

Count 1 – Deprivation of Rights pursuant to 42 U.S.C. § 1983;

Count 2 – RICO;

Count 3 – RICO conspiracy;

Count 8 - 42 U.S.C. § 1986, Action for neglect to prevent;

Count 9 – Americans with Disabilities Act;

and four claims pursuant to state law:

---

[1] The docket incorrectly refers to the Fifth Amended Complaint as the Sixth Amended Complaint.

Count 4 – Civil Conspiracy;

Count 5 – Abuse of Process;

Count 6 – Fraud; and

Count 7 – Theft or Alteration of Records Process, False Bail. *See* Fifth Amended Complaint at 35-45.

The State Defendants have moved to dismiss Plaintiff's Fifth Amended Complaint. *See* Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint, Doc. 115, filed February 17, 2025 ("Motion"). The State Defendants include:

Judicial Officers:

> Judge Amber Baker-Chavez
>
> Judge Gerard Lavelle
>
> Hearing Officer Elizabeth O'Rourke
>
> Administrative Court Clerk Ramon Maestas
>
> Trial Court Administrative Assistant Julio Estrada
>
> Court Clinician Sara Script
>
> Katina Watson, "CEO of the Second District Court in Bernalillo County"

CYFD Defendants:

> CYFD
>
> CYFD Caseworker DeAnna Romero
>
> CYFD Caseworker Rachel Rascon

and other Defendants:

> Christine E. Long, Disciplinary Board
>
> Phyllis Dominguez, Judicial Standards Commission

Peggy Cadwell, State Title II Coordinator,

Governor Michelle Lujan Grisham

State of New Mexico.  *See* Motion at 19.

Plaintiff did not file a response opposing the State Defendants' Motion by the March 3, 2025, deadline; nor did she seek an extension of time to file a response.  *See* D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion").  Plaintiff filed her Response a month after the deadline.  *See* Doc. 131, filed April 3, 2025.  The State Defendants did not move to strike the late Response and instead filed a Reply, Doc. 136, filed April 17, 2025, and a Notice of Completion of Briefing, Doc. 137, filed April 18, 2025, which recognizes Plaintiff's late Response.  Consequently, the Court has considered Plaintiff's late Response.  For the reasons stated below, the Court grants the State Defendants' Motion dismisses Plaintiff's claims against the State Defendants.

**Legal Standard for Stating a Claim**

We use the *Iqbal/Twombly* standard to determine whether Plaintiffs have stated a plausible claim. *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011). In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs. *Id.* at 1162. A plausible claim includes facts from which we may reasonably infer Defendant's liability. *Id.* at 1163. Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible. *Id.* Allegations that are "'merely consistent with' a defendant's liability" stop short of that line. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice. *Id.* An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement. *Kellum v. Mares*, 657 Fed. App'x 763, 770 (10th Cir. 2016) (unpublished) (citing Black's Law Dictionary (10th ed. 2014)). Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). In fact, we disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim. *Waller v.*

> *City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). We must draw on
> our experience and common sense in evaluating the plausibility of a claim. *Iqbal*,
> 556 U.S. at 679, 129 S.Ct. 1937. The degree of specificity needed to establish
> plausibility and provide fair notice depends on the context and the type of case. *Id.*;
> *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (footnote omitted);

*Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (To state a Section 1983 conspiracy claim,

a plaintiff has to allege "specific facts showing an agreement [upon a common, unconstitutional

goal], and concerted action [taken to advance that goal") among defendants".)

**State of New Mexico, CYFD and State Defendants in their Official Capacities**

Plaintiff asserts claims against the individual State Defendants in their official capacities,

the State of New Mexico and the Children, Youth and Families Department.  *See* Fifth Amended

Complaint at 1.  The State Defendants contend that "the Eleventh Amendment bars Plaintiff's

claims against the State, CYFD, and all official capacity claims against the individual [State]

Defendants."  Motion at 8 (asserting the *Ex parte Young* exception does not apply).

> Generally, states and their agencies are protected from suit by sovereign immunity,
> as guaranteed by the Eleventh Amendment. "The ultimate guarantee of the Eleventh
> Amendment is that nonconsenting States may not be sued by private individuals in
> federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct.
> 955, 148 L.Ed.2d 866 (2001). However, there are three exceptions to the Eleventh
> Amendment's guarantee of sovereign immunity to states:
>
>> First, a state may consent to suit in federal court. Second, Congress
>> may abrogate a state's sovereign immunity by appropriate
>> legislation when it acts under Section 5 of the Fourteenth
>> Amendment. Finally, under *Ex parte Young,* 209 U.S. 123, 28 S.Ct.
>> 441, 52 L.Ed. 714 (1908), a plaintiff may bring suit against
>> individual state officers acting in their official capacities if the
>> complaint alleges an ongoing violation of federal law and the
>> plaintiff seeks prospective relief.
>
> *Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1166 (10th Cir. 2012) (internal
> citations omitted and altered).

*Levy v. Kansas Dept. of Social and Rehabilitation Services*, 789 F.3d 1164, 1169 (10th Cir. 2015).

"The immunity extends to arms of the state and to state officials who are sued for damages in their

official capacity." *Turner v. National Council of State Boards of Nursing, Inc.*, 561 Fed.Appx.

661, 665 (10th Cir. 2014) (citing *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013)).

> Plaintiff states:

> The State of New Mexico and CYFD voluntarily waived their immunity under NM Stat 41-47-4 (2024), New Mexico House Bill 4, New Mexico Department of Justice agent giving consent to sue, and as stated herein. Further the rights have been waived via New Mexico Department of Justice and the agent waiving the immunity has been lodged.

Response at 3.

Plaintiff's reference to N.M.S.A. § 41-47-4 appears to by a typographical error; there is no

such section. It appears Plaintiff may be referring to N.M.S.A. § 41-4-4, Granting immunity from

tort liability, of the New Mexico Tort Claims Act which states in part:

> A governmental entity shall pay any settlement or any final judgment entered against a public employee for . . . a violation of . . . any rights . . .secured by the constitution and laws of the United States or the constitution and laws of New Mexico that occurred while the public employee was acting within the scope of his duty.

N.M.S.A. § 41-4-4(D). However, the New Mexico Tort Claims Act goes on to state:

> Nothing in Subsections B, C and D of this section shall be construed as a waiver of the immunity from liability granted by subsection A of this section or *as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution*.

N.M.S.A. § 41-4-4(F) (emphasis added).

Plaintiff's statement that the State of New Mexico and CYFD waived immunity pursuant

to New Mexico House Bill 4 appears to refer to the New Mexico Civil Rights Act. *See* Response

at 7 (quoting portions of House Bill 4 which refer to the New Mexico Civil Rights Act and are

identical to portions of the New Mexico Civil Rights Act).  The New Mexico Civil Rights Act provides:

> A person who claims to have suffered a deprivation of any rights, privileges or immunities *pursuant to the bill of rights of the constitution of New Mexico* due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief *in any New Mexico district court*.

N.M.S.A. § 41-4A-3(B) (emphasis added), and:

> The state shall not have sovereign immunity for itself or any public body within the state *for claims brought pursuant to the New Mexico Civil Rights Act*, and the public body or person acting on behalf of, under color of or within the course and scope of the authority of the public body provided pursuant to the New Mexico Civil Rights Act shall not assert sovereign immunity as a defense or bar to an action.

N.M.S.A. § 41-4A-9 (emphasis added).  The New Mexico Civil Rights Act waives sovereign immunity only for claims for deprivations of rights pursuant to the New Mexico Constitution brought in state court; it does not waive sovereign immunity for claims for deprivations of rights pursuant to the United States Constitution brought in this United States Court.

Plaintiff also states the New Mexico Department of Justice and one of its agents gave consent to sue.  However, Plaintiff has not cited any legal authority showing that the New Mexico Department of Justice or its agent have the authority to waive the State's Eleventh Amendment immunity.  *See* D.N.M.LR-Civ. 7.3(a) ("A motion, response or reply must cite authority in support of the legal positions advanced").

The Court dismisses Plaintiff's claims pursuant to 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964, and 42 U.S.C. § 1986, Action for neglect to prevent, against the individual State Defendants in their official capacities, the State of New Mexico and CYFD.  The Court addresses Plaintiff's claims pursuant to the Americans with Disabilities Act below. *See Turner v. National Council of State Boards of Nursing,*

*Inc.*, 561 Fed.Appx. 661, 665 (10th Cir. 2014) ("Congress unequivocally intended to abrogate the states' sovereign immunity under the ADA").

**Judicial Defendants**

Plaintiff asserts that:

Defendants Judge Amber Baker-Chavez, Hearing Officer Elizabeth [O']Rourke, Judge Gerard Lavelle, and Christine E. Long are not entitled to absolute immunity. The Judges did not take an official, adjudicative act and are not cloaked in absolute immunity as the have acted outside their judicial capacity.

Response at 5.    Plaintiff also asserts that "a judge's 'Criminal acts' are not subject to absolute immunity" and "Judges are not exempt from criminal activity and can be held criminally liable for actions that violate the law, even if those actions are related to their duty."  Response at 10-11.

The Supreme Court of the United States has long held that judges are generally immune from suits for money damages. *Mireles v. Waco,* 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). There are only two exceptions to this rule: (1) when the act is "not taken in [the judge's] judicial capacity," and (2) when the act, "though judicial in nature, [is] taken in the complete absence of all jurisdiction." *Id.* at 12. Regarding the second exception, an act taken in excess of a court's jurisdiction is not to be confused with an act taken in the "complete absence of all jurisdiction." As *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 351–52, 20 L.Ed. 646 (1871), explained,

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

To illustrate this distinction, the Supreme Court has stated:

[I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should

> convict a defendant of a nonexistent crime, he would merely be
> acting in excess of his jurisdiction and would be immune.

*Stein v. Disciplinary Bd. Of Supreme Court of New Mexico*, 520 F.3d 1183, 1195 (10th Cir. 2008)

(quoting *Stump v. Sparkman,* 435 U.S. 349, 357 n. 7 (1978)); *Stump v. Sparkman*, 435 U.S. 349,

356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity

because the action he took was in error, was done maliciously, or was in excess of his authority");

*Sawyer v. Gorman*, 317 Fed.Appx. 725, 728 (10th Cir. 2008) ("[I]mmunity which derives from

judicial immunity may extend to persons other than a judge where performance of judicial acts or

activity as an official aid of the judge is involved. Absolute judicial immunity has thus been

extended to non-judicial officers, like clerks of court, where their duties had an integral relationship

with the judicial process.") (quoting *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000).

   The Court has reviewed the factual allegations regarding each Judicial Defendant in the

Fifth Amended Complaint.  *See* Fifth Amended Complaint at 9-11, ¶¶ 51-50 (indicating Judge

Baker-Chavez presided over hearing until she recused on March 17, 2024); at 11-12, ¶¶ 51-65

(indicating Hearing Officer O'Rourke misrepresented Plaintiff's position, denied Plaintiff

opportunity to present evidence, concealed discovery submitted by Plaintiff, ignored Defendant

Cobos' lack of involvement in the children's lives, denied Plaintiff the right to be heard, threatened

Plaintiff with a warrant); at 13-14, ¶¶ 66-80 (indicating Judge Lavelle conspired with the Hearing

Officer, stayed after official court hours after a hearing to sign and file a recommendation, denied

Plaintiff's motion to disqualify Hearing Officer O'Rourke, denied Plaintiff's motion to strike false

reports submitted by Defendant Script, failed to disqualify himself, wrote orders "despite questions

regarding his jurisdiction and without the Plaintiff's consent, prolonged hearings, exhibited a lack

of decorum); at 16-17, ¶¶ 92-97 (indicating Administrative Court Clerk Maestas denied Plaintiff's

request for Hearing Officer O'Rourke's phone records, failed to address misconduct by Hearing

Officer O'Rourke and Court Clinician Script alleged in Plaintiff's email and "erroneously asserted that the Plaintiff did not possess the right to record"); at 17, ¶¶ 98-104 (indicating Trial Court Administrative Assistant Estrada participated in proceedings, was aware that Plaintiff's rights under the ADA were being violated, failed to report ADA violations); at 17-18, ¶¶ 105-114 (indicating Court Clinician Script submitted a report to the Court that included false hearsay from Defendant Cobos, misleading references to Plaintiff's conduct and "irrelevant references to counseling and kinetic sand"); at 27, ¶¶ 187-191 (indicating Second Judicial District Court "CEO" Watson failed to take meaningful action to address Plaintiff's allegation regarding the conduct of Hearing Officer O'Rourke, Court Clinician Script and an attorney). Those allegations show that those actions were taken in the Judicial Defendants' judicial capacities. Plaintiff has not identified any factual allegations showing that the Judicial Defendants' actions were taken in the complete absence of all jurisdiction. The Court concludes the Judicial Defendants have absolute immunity.

The State Defendants assert that "[s]imilar to the judicial defendants, Christine E. Long [Disciplinary Board], who engaged in a judicial or prosecutorial function is also entitled to absolute prosecutorial immunity." Motion at 4. Plaintiff alleges:

174. On May 2, 2023, the Plaintiff submitted a complaint against Hearing Officer Elizabeth [O']Rourke to the Disciplinary Board, alleging misconduct in her official capacity.

175. Christina E. Long, in her capacity as Deputy Disciplinary counsel, was responsible for investigating the aforementioned complaint.

176. Upon completion of her investigation, Christina E. Long denied the appeal submitted by the Plaintiff without conducting a thorough and impartial review of the evidence presented.

177. Christina E. Long's failure to conduct a full and fair investigation constitutes a cover-up of the wrongdoings associated with Hearing Officer Elizabeth [O']Rourke.

178.  Christina E. Long had a duty to recognize and address misconduct alleged in the complaint and should have known that her actions-or lack thereof-could lead to further harm to the Plaintiff and other affected by the actions of Hearing Officer [O']Rourke.

Fifth Amended Complaint at 25-26.

"Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Chilcoat v. San Juan County*, 41 F.4th 1196, 1209 (10th Cir. 2022). (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).  Plaintiff states "Christine E. Long [is] not entitled to absolute immunity" but does explain why Defendant Long is not entitled to absolute immunity as a prosecutor.  Response at 5.  The Court concludes Defendant Long is entitled to absolute immunity.

**State Officials – Qualified Immunity**

The individual State Defendants assert they "are entitled to qualified immunity regarding the claims against them in their individual capacities."  Motion at 5.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mullenix v. Luna*, —— U.S. —— , 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

*Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020).

"When a defendant asserts the defense of qualified immunity, the onus is on the plaintiff to demonstrate (1) that the official conduct violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016) (internal quotation marks omitted). If the plaintiff fails to make either showing, the defendant is entitled to qualified immunity. *Id.* at 1134–35.

For a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

courts must have found the law to be as the plaintiff maintains." *Mocek v. City of Albuquerque*, 813 F.3d 912, 922 (10th Cir. 2015) (quotation marks omitted). The Supreme Court has cautioned "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Further, a "clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)). If reasonable officers could disagree, the right is not clearly established. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*Lowther v. Children Youth and Family Department*, 101 F.4th 742, 756 (10th Cir. 2024) (emphasis in original).

Plaintiff's response to the State Defendants' assertion of the defense of qualified immunity states:

The state of New Mexico does not offer qualified immunity House Bill 4 [New Mexico Civil Rights Act].  As stated in the Fifth Amended Complaint the Defendants' actions violated clearly established statutory and constitutional rights which a reasonable person would have known.  See:

The U.S. Supreme Court has declared that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The State Defendants were given notice through the Torts claims, Judge Gerard Lavelle, COL warnings, The State was given notice through NM Department of Justice complaint, the Attorney General Raul Torrez with a letter of intent, the District Attorney's office.

Peggy Ca[]dwell, Julio Estrada, Ramon Maestas, Katina Watson, Governor Michelle Lujan Grisham, Phyllis Dominguez all should have known as they should be in compliance with ADA Title II accommodations, Federal law, their oaths.  The Plaintiff fully intends to provide discovery that the defendants should have known. Further the Plaintiff has sufficient evidence to support the facts alleged.

> Once a 1983 defendant pleads qualified immunity and shows that he is a governmental official whose position involves the exercise of discretion, the plaintiff bears the burden of rebutting this defense by establishing that the official's wrongful conduct violated clearly established law. [citations omitted].

> Therefore, the State Defendants are not entitled to qualified immunity regarding claims against them in their individual capacities.

Response at 8-9.

The Court grants the State Defendants' Motion to dismiss the claims against the individual State Defendants on the grounds of qualified immunity. Plaintiff has not cited any Supreme Court or Tenth Circuit decisions showing that the rights she alleges the State Defendants violated were clearly established in the specific context of this case. *See* Response at 8-9 (addressing the State Defendants' assertion of qualified immunity). Plaintiff's vague reference to the Fifth Amended Complaint, which contains over 300 paragraphs, is not sufficient. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record"). Plaintiff's argument that House Bill 4 [New Mexico Civil Rights Act] does not allow for qualified immunity is meritless because, as discussed above, the New Mexico Civil Rights Act does not waive sovereign immunity for claims for deprivations of rights pursuant to the United States Constitution brought in this United States Court.

The State Defendants also assert that Plaintiff's Fifth Amended Complaint does not establish any constitutional violations. *See* Motion at 6, 9-14 (explaining why the Fifth Amended Complaint fails to state claims for civil rights violations). Because the Court has concluded that the individual State Defendants are entitled to qualified immunity, the Court declines to determine whether Plaintiff stated a claim upon which relief can be granted for each constitutional claim against each individual State Defendant.

**18 U.S.C. §§ 241 and 242**

Plaintiff asserts claims for deprivation of rights pursuant to 18 U.S.C. §§ 241 and 242. *See* Fifth Amended Complaint at 35. The State Defendants assert that Plaintiff fails to state claims pursuant to 18 U.S.C. §§ 241 and 242 because Sections 241 and 242 are criminal statutes and do not create private civil causes of action. *See* Motion at 14. Plaintiff argues Sections 241 and 242 "can be used as a basis for civil action, under 42 U.S.C. 1983, which allows individuals to sue state actors for violations of federal rights" and states:

> A case from the U.S. Courts of a[A]ppeals for the Eighth Circuit, United States v. Lee, demonstrates the First Amendment concerns that arise when Section 241 is improperly invoked. 935 F.2d 952[ ](8th Cir. 1991), opinion and judgement vacated as to Cou[n]t 1, id. at 960, rev'd and remanded, 6 F.3d 1297 (8th Cir. 1993) (en banc)(per curiam).

Response at 21.

> To establish that a statute authorizes a private cause of action, a plaintiff:

> must show that Congress intended such authorization. *Alexander v. Sandoval*, 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Specifically, he must show that the statute "displays an intent to create not just a private right but also a private remedy." *Id.* at 286, 121 S.Ct. 1511. Unless the statute expresses an intent to create both a private right and a private remedy, "a cause of action does not exist and [we] may not create one, no matter how desirable that might be as a policy matter." *Id.* at 286–87, 121 S.Ct. 1511; *see also Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1064 (10th Cir. 2008) ("Absent Congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist.").

*Serna v. Denver Police Department*, 58 F.4th 1167, 1171 (10th Cir. 2023); *Kelly v. Rockefeller*, 69 Fed.Appx. 414, 415-416 (10th Cir. 2003) ("[C]riminal statutes do not provide for private civil causes of action.") (citing *Newcomb v. Ingle*, 827 F.2d 675,677 n.1 (10th Cir. 1987)).

The Court dismisses Plaintiff's claims pursuant to 18 U.S.C. §§ 241 and 242 for failure to state a claim. Plaintiff does not cite any legal authority showing that Sections 241 and 242 create a private right and a private remedy.

**Count 2 - RICO and Count 3 – RICO Conspiracy**

Plaintiff asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations

("RICO") Act, 18 U.S.C. § 1964, Civil remedies.

> To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). "Racketeering activity" consists of the criminal offenses listed in 18 U.S.C. § 1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other. 18 U.S.C. § 1961(5).
> ....
>
> According to the Supreme Court, a RICO pattern requires that the racketeering predicates relate to each other and amount to a threat of continued racketeering activity.
> ....
>
> racketeering predicates relate to each other if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."

*Johnson v. Heath*, 56 F.4th 851, 858-859 (10th Cir. 2022).

> The State Defendants assert:
>
> RICO takes aim at racketeering activity and organized crime such as mail and wire fraud, offenses involving bankruptcy or securities, and drug-related activities. *Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 481 (1985). There can be no civil recovery under RICO in cases that have nothing to do with organized crime, the target of the RICO statute. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 463 (2006). The State Defendants are unaware of any legal authority allowing a plaintiff adversely affected by custody proceedings to pursue relief under RICO against state officials who participated in the custody proceedings, and this is a frivolous claim.

Motion at 14-15.

> The Supreme Court case, *Sedima v. Imrex*, cited by the State Defendants states:
>
> RICO takes aim at "racketeering activity," which it defines as any act "chargeable" under several generically described state criminal laws, any act "indictable" under numerous specific federal criminal provisions, including mail and wire fraud, and any "offense" involving bankruptcy or securities fraud or drug-related activities that is "punishable" under federal law. § 1961(1). Section 1962, entitled "Prohibited Activities," outlaws the use of income derived from a "pattern of racketeering

activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce; the acquisition or maintenance of any interest in an enterprise "through" a pattern of racketeering activity; conducting or participating in the conduct of an enterprise through a pattern of racketeering activity; and conspiring to violate any of these provisions.

Congress provided criminal penalties of imprisonment, fines, and forfeiture for violation of these provisions. § 1963. In addition, it set out a far-reaching civil enforcement scheme, § 1964, including the following provision for private suits:

> "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." § 1964(c).

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481-483 (1985) (footnotes omitted). "[T]he purpose and history of the Act and the substance of RICO's provisions demonstrate a clear congressional intent that RICO be interpreted to apply to activities that corrupt public or governmental entities. We note that this view is shared by virtually every other court that has considered the question." *United States v. Angelilli*, 660 F.2d 23, 33 (2d Cir. 1981) (citing cases); *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003) ("The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers"). The other Supreme Court case cited by Defendants, *Anza v. Ideal Steel*, states "organized crime [is] the target of the RICO statute." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 463 (2006).

Plaintiff makes conclusory allegations that Defendants participated in and conspired to conduct an enterprise through a pattern of racketeering activity. *See, for example*, Fifth Amended Complaint at 4. An "'enterprise' includes any individual, partnership corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961.

An enterprise is established "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

> [*United States v. Turkette*, 452 U.S. 576, 583 (1981)]. The enterprise "is an entity separate and apart from the pattern of [racketeering] activity in which it engages," *ibid;* see also *United States v. Anderson,* 626 F.2d 1358, 1365 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), although the proof of these separate elements "may in particular cases coalesce." *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2529. See generally *United States v. Riccobene,* 709 F.2d 214, 221–23 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).
>
> Following *Turkette,* this Court in *United States v. Bledsoe,* 674 F.2d 647, 664–65 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982), identified three characteristics that distinguish a RICO enterprise: First, there must be a common or shared purpose that animates the individuals associated with it. Second, it must be an "ongoing organization" whose members "function as a continuing unit," *Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528; in other words, there must be some continuity of structure and of personnel. Third, there must be an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering activity. See also, *United States v. Lemm,* 680 F.2d 1193, 1198 (8th Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). Proof of all three of these characteristics is necessary in order to avoid the danger of guilt by association that arises because RICO does not require a proof of a single agreement as in a conspiracy case, and in order to ensure that criminal enterprises, which are RICO's target, are distinguished from individuals who associate for the commission of sporadic crime. *Bledsoe,* 674 F.2d at 664–65; *Lemm,* 680 F.2d at 1198.

*United States v. Kragness*, 830 F.2d 842, 855 (8th Cir. 1987).

Plaintiff states "the Defense would like to mislead the Court into believing that the complaint is a custody dispute as it would help them with their attempts to dismiss," cites federal and New Mexico racketeering statutes, states her RICO injury was sustained pursuant to the New Mexico racketeering civil remedies statute "by way of intentional infliction of emotional distress, defamation, invasion of privacy," states her RICO claims are "not barred by concurrent 1983 action," and indicates that the Fifth Amended Complaint states a RICO claim.  Response at 21-22.

The Court dismisses Plaintiff's claims pursuant to RICO for failure to state a claim. Defendants in this case include state-court judges and other judicial officers involved in adjudicating a child custody case, CYFD case workers, a behavioral health agency and social workers specializing in the treatment of families, children and their caregivers, the children's father

and his attorneys.   The allegations in the Fifth Amended Complaint show that each of the Defendants were involved with the child custody proceedings but do not plausibly allege that Defendants functioned as a continuing unit with a shared purpose to deprive Plaintiff of her rights through crimes that constitute racketeering activities.

**Count 8 – Neglect to Prevent**

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1986, Action for neglect to prevent.  *See* Fifth Amended Complaint at 4, 45 (alleging Defendants "engaged in a concerted effort to make knowingly neglected to prevent the wrongs conspired to be done, having power or aid in preventing the commission of the same, neglected or refused to do so" [sic]); Response at 24 (quoting 42 U.S.C. § 1986).

42 U.S.C. § 1986:

provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid ... neglects or refuses to do so." Hence, there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985. Santistevan and Herrera failed to establish a viable § 1985(1) cause of action. Thus, the district court properly dismissed their § 1986 claim. . .

*Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

The "Counts" Plaintiff asserts in her Fifth Amended Complaint do not include a claim for Conspiracy pursuant to 42 U.S.C. § 1985.  *See* Fifth Amended Complaint at 42 (asserting "Count Four Civil Conspiracy").  Plaintiff does, however, reference 42 U.S.C. § 1985 in the "Jurisdiction" section of the Fifth Amended Complaint.  *See* Fifth Amended Complaint at 4.

The relevant portion of § 1985(2) provides a right of action "if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Section 1985(3), clause 1, provides a right of action "[i]f two or more persons in any State or

Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3).

Among other elements, both causes of action require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also Murray v. City of Sapulpa,* 45 F.3d 1417, 1423 (10th Cir.1995); *Smith v. Yellow Freight Sys., Inc.,* 536 F.2d 1320, 1323 (10th Cir.1976). The focus of the racial animus inquiry is the government actor's "intent, motive, or purpose." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 647 (10th Cir.1988). To avoid summary judgment, Plaintiffs must point to "specific, nonconclusory evidence" that the Defendants' actions were "improperly motivated." *Id.* at 650.

*Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015).  Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1985 because: (i) she does not allege facts showing some racial or otherwise class-based discriminatory animus behind Defendants' actions; and (ii) she has not alleged non-conclusory facts establishing a conspiracy.  Because Plaintiff failed to establish a viable Section 1985 claim, the Court dismisses Plaintiff's Section 1986 claim.

**Count 9 – Americans with Disabilities Act**

Plaintiff asserts claims pursuant to Title II of the Americans with Disabilities Act against the State of New Mexico and some of the individual State Defendants.  *See* Fifth Amended Complaint at 46.  Plaintiff alleges the following in support of her ADA claims:

75.  The Plaintiff's rights under Title II of the Americans with Disabilities Act (ADA) were violated when the Defendants failed to provide reasonable accommodations, including access to court hearings and the ability to record proceeding for communications purposes.
....

80.  The Plaintiff contends that [J]udge Lavelle's actions, including changing order on April 17 and April 18, noting addressing subject matter, the contempt's [sic], denial of ADA accommodations, they were retaliatory and aimed at further isolating the Plaintiff from her children.
....

92.    On December 11, 2023, the Plaintiff formally requested reasonable accommodations under the ADA Title II, which were subsequently denied, thereby

infringing on her rights by association and compelling her to seek a continuance as provided for under the ADA (See Exhibit 9).[2]

....

95.    The Court house is a designated public forum, wherein the Plaintiff was exercising her rights under the ADA Title II concerning "communication." The Plaintiff recorded communications in the privacy of her [sic] for her protection.

....

99.  Julio Estrada was aware that Plaintiff's rights were being deprived and violated, particularly concerning the Plaintiff's rights under Title II of the ADA, which prohibits discrimination on the basis of disability in the state and local government services.

100.  Despite his knowledge of the rights violations, Julio Estrada failed to report these violations to the appropriate authorities as required by established procedures.

101.  Estrada's role in scheduling the hearings and communicating with the Plaintiff regarding rescheduling for a Zoom hearing further implies his awareness of the ongoing ADA violations.

....

218.  On December 4, 2023, Plaintiff submitted a formal complaint regarding an alleged violation of the Americans with Disabilities Act 1990 (ADA) by Judge Gerard Lavelle.

219.  Despite the pending complaint and the Plaintiff's request for ADA accommodations, Judge Lavelle proceeded with a hearing that was not accessible to the Plaintiff.

220.  The Plaintiff was compelled to file a motion for a continuance due to the denial of ADA accommodations by Defendant Ramon Maestas.

221.  The Plaintiff did not receive a response regarding any resolution or procedure to appeal against the decision made by the Defendants.

222.  The denial of ADA accommodations to the Plaintiff based on her association with her minor Child with disabilities, constitutes a violation of Title II of the ADA, which prohibits discrimination on the basis of disability.

223.  Title II of the ADA, as outlined in 28 C.F.R. $ 35.130(9), specifically prohibits public entities from excluding or denying equal services, programs, or activities to individuals based on their association with the individual with a known disability.

---

[2] Exhibit 9 was not attached to the Fifth Amended Complaint.

224.  Peggy Ca[d]well had knowledge of the alleged violations committed by Judge Lavelle and failed to act to prevent further discrimination against the Plaintiff.

225.  On December 28,2023, Peggy Ca[d]well made false statements in response to the Plaintiffs concerns, failing to conduct a thorough investigation or provide a resolution consistent with the Plaintiffs rights under the ADA.

226.  The Plaintiff submitted a follow-up response on January 1,2024 addressing the false statements made by Peggy Ca[d]well.

221.  It is alleged that Peggy Ca[d]well conspired with Judge Gerard Lavell and Ramon Maestas to deprive the Plaintiff of her ADA rights, thereby obstructing just and the legal proceedings.

228.  The Plaintiff alleged that Defendant Peggy Ca[d]well made false statements in her response dated December 28, 2023, and did not conduct a proper investigation into the Plaintiff claims.

229.  Defendant Ca[d]well conspired with Defendants Judge Lavelle and Ramon Maestas to deprive the Plaintiff of her ADA rights and obstruct justice.

230.  The actions of Defendants constitute a violation of the ADA and may also constitute a violation of RICO, as they engaged in a pattern of Racketeering activity aimed at denying the Plaintiff equal access to justice.

Fifth Amended Complaint at 13-14, 16-17, 31-32.

The State Defendants move to dismiss Plaintiff's ADA claim for failure to state a claim.

To establish a Title II violation under a reasonable accommodation theory, [plaintiff] must show: (1) he is a qualified individual with a disability; (2) he was "excluded from participation in or denied the benefits of some public entity's services, programs, or activities" and (3) such exclusion or denial of benefits was by reason of his disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)

*Brooks v. Colo. Dept. of Corrections*, 12 F.4th 1160, 1167 (10th Cir. 2021).  The State Defendants assert that "Plaintiff has not alleged she has a disability, the nature of any such disability, or the acts taken to fail to accommodate such disability or to take action against her due to such disability." Motion at 17.

Plaintiff contends that she is asserting an associational discrimination claim based on her minor child's disability.  *See* Fifth Amended Complaint at 31-32, ¶¶ 222-223; Response at 24.

Plaintiff cites 28 C.F.R. 35.130(g) which states: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." "[T]he ADA recognizes that a person can be harmed by discrimination against someone with whom he or she is associated." *Hummel v. St. Joseph County Bd. of Comm'rs*, 817 F.3d 1010, 1019 (2016). Plaintiff fails to state an associational discrimination claim because she has not plausibly alleged that the State Defendants denied Plaintiff access to the state court or its services because of her child's disability or that the State Defendants discriminated against Plaintiff's disabled child.

Furthermore, Title II does not create individual liability. *See Brooks v. Colo. Dept. of Corrections*, 715 Fed.Appx. 814, 818 (10th Cir. 2017) ("Title II does not create individual liability") (citing *Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999)); *Carrasquillo v. City of New York*, 324 F.Supp.2d 428, 441-442 (S.D.N.Y. 2004) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities . . . because Title II provides disabled individuals redress for discrimination by a *public entity,* which, as it is defined in the statute, does not include individuals).

The Court dismisses Plaintiff's claims pursuant to Title II of the Americans with Disabilities Act for failure to state a claim because the Fifth Amended Complaint does not allege facts showing that Plaintiff is disabled under the ADA or that she was excluded from participation in state court proceedings due to her child's disability.

### *Rooker-Feldman* Doctrine

The State Defendants assert "Plaintiff's constitutional claims are barred by the *Rooker-Feldman* doctrine." Motion at 17. The *Rooker-Feldman* doctrine:

> bars federal district courts from hearing cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Where the relief requested would necessarily undo the state court's judgment, *Rooker-Feldman* deprives the district court of jurisdiction. *Mo's Express*, 441 F.3d at 1237.

*Velasquez v. Utah*, 775 Fed.Appx. 420, 422 (10th Cir. 2019); *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("Under [the *Rooker-Feldman*] doctrine, 'a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights'") (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "[F]ederal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment." *Jakupovic v. Curran*, 850 F.3d 898, 902 (10th Cir. 2017) ("A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.") (quoting *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008)).

Plaintiff contends *Rooker-Feldman* does not bar her Fifth Amended Complaint. Plaintiff states she "is not a state Court loser" but does not explain why she is not a state court loser. *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction"). Plaintiff also states *Rooker-Feldman* does not apply due to the "fraud exception" which applies when a judgement is alleged to have been procured through fraud. *See* Response at 26. The Court declines to apply the fraud exception to the *Rooker-Feldman* analysis based on the Tenth Circuit's recent statement:

> We have not explicitly rejected a fraud exception to *Rooker-Feldman*, but an unpublished decision cast considerable doubt on it. *See West v. Evergreen Highlands Ass'n*, 213 F. App'x 670, 674 n.3 (10th Cir. 2007). As the court explained in *West*, "[t]here is good reason to balk at" adopting such a fraud exception because "[s]tate rules of procedure provide various means to attack a wrongfully obtained judgment." *Id.* "Construing *Rooker-Feldman* to permit federal reconsideration and nullification of state judgments on grounds that could have been pursued in state court arguably allows under the rubric of collateral attack just another mechanism for lower federal court review unauthorized under § 1257."[4] *Id.*

*Day v. Devries*, 2023 WL 3842664, *4 (10th Cir.) (n.4 notes that "the decision that first adopted the fraud exception . . . quoted a decision . . . that involved an exception to res judicata—not *Rooker-Feldman*").

Plaintiff seeks the following relief:

1.    An order declaring that the proceedings of the State Court herein identified, and all orders promulgated therefrom, are null and void and of no effect.

2.    [A declaration] that the defendants have acted illegally and unconstitutionally in violating the Plaintiff's constitutional rights and liberties and have acted illegally and unconsciously and it is capricious and willful manner in hindering and preventing the Plaintiff's effort to bring action in Court.

3.    Issue an emergency return order for two oldest minor Children mirroring aspects of Hague Convention for two older minor children held hostage for over 625 days by Defendant Billy Cobos and Jennifer Lopez and all law enforcement to aid in the return.

4.    An order declaring that all Defendant[s]' acts or omissions, described herein, violated the 1st, 4th, 8th, and 14th Amendments to the United States Constitution.

Fifth Amended Complaint at 47 (also seeking compensatory and punitive damages).  Plaintiff complains of injuries and violations of her rights resulting from state-court proceedings.  Plaintiff has not shown that the Court has jurisdiction over her claims.  Plaintiff's claims are inextricably intertwined with the state-court proceedings and the relief Plaintiff seeks would undue state-court judgments.

**State Law Claims**

It appears Plaintiff is asserting Counts Four through Seven pursuant to state law because the Fifth Amended Complaint does not cite any federal law regarding those Counts. The Court, having dismissed Plaintiff's federal law claims, declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses Plaintiff's state law claims without prejudice. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial").

**IT IS ORDERED** that the State Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint, Doc. 115, filed February 17, 2025, is **GRANTED** as follows: (i) Plaintiff's claims pursuant to federal law are **DISMISSED with prejudice**; (ii) Plaintiff's claims pursuant to state law are **DISMISSED without prejudice.**

/s/_____
KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.