IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTOINETTE MARQUEZ,

    Plaintiff,

v.                                                                         No. 1:24-cv-00423-KG-JMR

AMBER BAKER-CHAVEZ, *et al.*,

    Defendants.

**ORDER GRANTING IN PART**
**ALBUQUERQUE PUBLIC SCHOOLS' MOTION TO DISMISS**

    This case arises from events occurring in conjunction with child custody proceedings in state court. *See* Fifth Amended Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, Doc. 110, filed January 31, 2025 ("Fifth Amended Complaint").[1] *Pro se* Plaintiff asserts claims against several state officials including judges, judicial employees and case workers, the Children, Youth and Families Department ("CYFD") and the State of New Mexico (collectively "the State Defendants") and against Albuquerque Public Schools ("APS") and several private individuals and entities. *See* Fifth Amended Complaint at 1 (naming 25 Defendants).

    Plaintiff asserts four claims against APS pursuant to federal law:

    Count 1 – Deprivation of Rights pursuant to 42 U.S.C. § 1983;

    Count 2 – RICO;

    Count 3 – RICO conspiracy;

    Count 8 - 42 U.S.C. § 1986, Action for neglect to prevent;

and four claims pursuant to state law:

    Count 4 – Civil Conspiracy;

---

[1] The docket incorrectly refers to the Fifth Amended Complaint as the Sixth Amended Complaint.

Count 5 – Abuse of Process;

Count 6 – Fraud; and

Count 7 – Theft or Alteration of Records Process, False Bail.  *See* Fifth Amended Complaint at 35-45.

APS moves to dismiss Plaintiff's Fifth Amended Complaint.  *See* APS' Motion to Dismiss Plaintiff's Fifth Amended Complaint, Doc. 114, filed February 13, 2025 ("Motion").

Plaintiff did not file a response opposing APS' Motion by the February 27, 2025, deadline; nor did she seek an extension of time to file a response.  *See* D.N.M.LR-Civ. 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion").  Plaintiff filed her Response almost two weeks after the deadline.  *See* Doc. 121, filed March 12, 2025.  APS did not move to strike the late Response and instead filed a Reply, Doc. 128, filed March 26, 2025, and a Notice of Completion of Briefing, Doc. 129, filed March 26, 2025, which recognizes Plaintiff's late Response.  Consequently, the Court has considered Plaintiff's late Response.  For the reasons stated below, the Court grants APS' Motion in part.

**Legal Standard for Stating a Claim**

> We use the *Iqbal/Twombly* standard to determine whether Plaintiffs have stated a plausible claim. *Brown v. Montoya*, 662 F.3d 1152, 1162–63 (10th Cir. 2011). In applying this standard, we take Plaintiffs' well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences from the facts in favor of Plaintiffs. *Id.* at 1162. A plausible claim includes facts from which we may reasonably infer Defendant's liability. *Id.* at 1163. Plaintiffs must nudge the claim across the line from conceivable or speculative to plausible. *Id.* Allegations that are "'merely consistent with' a defendant's liability" stop short of that line. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice. *Id.* An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement. *Kellum v. Mares*, 657 Fed. App'x 763, 770 (10th Cir. 2016) (unpublished) (citing Black's Law Dictionary (10th ed. 2014)). Conclusory allegations are "not entitled to the assumption of truth." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). In fact, we disregard conclusory statements and look to the remaining factual allegations to see whether Plaintiffs have stated a plausible claim. *Waller v.*

2

*City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). We must draw on our experience and common sense in evaluating the plausibility of a claim. *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case. *Id.*; *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

*Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) (footnote omitted);

*Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (To state a Section 1983 conspiracy claim, a plaintiff has to allege "specific facts showing an agreement [upon a common, unconstitutional goal], and concerted action [taken to advance that goal") among defendants").

**Count 1 – Deprivation of Rights Pursuant to 42 U.S.C. § 1983 and 18 U.S.C. §§ 241 and 242**

Plaintiff asserts due process and equal protection claims pursuant to 42 U.S.C. § 1983 against APS, *see* Fifth Amended Complaint at 35-36, and alleges the following regarding APS:

210.  On or about November 9, 2023, APS's Student Service Center denied the Plaintiff access to her Children's educational records and failed to provide the necessary policies and procedures governing such access.

211.  In October 2023, teachers at APS conspired with Defendant Cobos to prevent the Plaintiff from participating in a scheduled parent-teacher conference via telephone, thereby depriving her of her rights as a parent.

212.  In August 2023, Liz Garcia-Lobato, Secretary to the Superintendent, denied the plaintiff the opportunity to communicate with Scott Elder, the Superintendent a[t] the time, regarding her rights to access her Children's schooling and records.

213.  Defendant Cobos further obstructed the Plaintiff access to Parentvue, a platform intended for parents to monitor their Children's academic progress, including assignments and grades.  The obstruction occurred after a teacher contacted the Plaintiff regarding her Child's missing assignments.

214.  The actions of Defendants, including the denial of access to educational records and communication, amount to a conspiracy to deprive the Plaintiff of her parental rights and responsibilities as guaranteed under the Family Educational Rights and Privacy Act (FERPA) and APS's own policies, specifically KB1 Students and Parent/Guardian Right and Responsibilities.

215.  Defendants knowingly and intentionally engaged in a course of conduct that constitutes collusion and conspiracy to deprive the Plaintiff of her rights, thereby violating her legal entitlements and responsibilities as a parent.

3

>216. The Plaintiff alleges that the Defendants knowingly conspired to deprive her of rights, constituting a violation of her parental rights and educational access.
>
>217. The Plaintiff has been subjected to parental interference, effectively withholding her from educational involvement for over 625 days.

Fifth Amended Complaint at 30-31.

APS asserts that Plaintiff fails to state a claim against APS pursuant to Section 1983 because the Fifth Amended Complaint "fails to allege that an official policy or custom of APS was the moving force behind the alleged constitutional deprivation." Motion at 5.

> The Supreme Court has made clear that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[I]n other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. 2018. Instead, "the government as an entity" may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018.
>
> Thus, to establish municipal liability, a plaintiff must first demonstrate a "municipal policy or custom," which may take one of the following forms:
>
>> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.
>
> *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) . . .

*Waller v. City and County of Denver*, 932 F.3d 1277, 1283-84 (10th Cir. 2019).

Plaintiff states "Paragraph #214 clearly states FERPA and APS's policy and procedure KB1." Response at 3. Paragraph 214, quoted above, alleges Defendants actions "amount to a conspiracy to deprive the Plaintiff of her parental rights and responsibilities as guaranteed under

4

the Family Educational Rights and Privacy Act (FERPA) and APS's own policies, specifically KB1 Students and Parent/Guardian Right and Responsibilities." Paragraph 214 does not allege that the execution of FERPA and APS' KB1 policy inflicted Plaintiff's alleged injuries.

The Fifth Amended Complaint fails to state a claim against APS pursuant to Section 1983 because it fails to allege that an official policy or custom of APS was the moving force behind the alleged constitutional deprivations by APS' employees and agents. Because it is granting APS's Motion to dismiss the Section 1983 claims for that reason, the Court declines to determine whether the Fifth Amended Complaint adequately alleges APS' employees and agents, who are not Defendants in this case, violated Plaintiff's civil rights.

**Count 2 - RICO and Count 3 – RICO Conspiracy**

Plaintiff asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964, Civil remedies.

> To plead a valid RICO claim, a plaintiff must plausibly allege that a defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016). "Racketeering activity" consists of the criminal offenses listed in 18 U.S.C. § 1961(1), and a "pattern" requires at least two racketeering acts committed within ten years of each other. 18 U.S.C. § 1961(5).

*Johnson v. Heath*, 56 F.4th 851, 858-859 (10th Cir. 2022). The Court discussed the relevant case law regarding RICO claims in its Order granting the State of New Mexico Defendants' Motion to Dismiss and incorporates that discussion by reference. *See* Mem. Op. and Order Granting State Defendants' Motion to Dismiss at 14-16, Doc. 173, filed September 19, 2025.

Defendant APS asserts Plaintiff's Fifth Amended Complaint:

> fails to state plausible RICO claims against APS and the other Defendant[s] because it does not allege facts capable of supporting a finding or inference of a RICO enterprise. Instead, Plaintiff makes conclusory allegation of the elements of a cause of action, which is contrary to [the] pleading standard in *Iqbal* and *Twombly*. *See generally,* 5AC [110], ¶¶274-97. Plaintiff does not allege facts plausible to support that APS and the Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

5

> activity. . ." 18 U.S.C. § 1964(c). Plaintiff's RICO claims are nothing more than frivolous claims against state entities and officials who participated in the custody proceeding and who abided by the state court's orders. Therefore, this Court should dismiss Counts II and III with prejudice.

Motion at 8-9.

Plaintiff states she "believes she has pleaded Counts II and III which relief may be granted as stated herein and *in the amended complaint*:"

> The Plaintiff pleaded the four (4) elements the conduct of each defendant of the enterprise, pattern the Plaintiff submitted an attachment showing a pattern activity of over ten years, CYFD actions are a statewide problem (giving children to abusers and receives funding from the state), the Second Direct [sic] Court use many defendants as referrals (They are listed on their website), the state has contracts and state funds the entities and racket[eer]ing activity such as kidnapping, fraud of the Court, false statements, mail fraud, concealing evidence, fraudulent reports, obstruction of justice, tampering with a witness/victim, and as stated *in the Amended Complaint*.
> . . . .
> The Plaintiff['s] RICO injury was sustained to her person pursuant to NM Stat § 30-42-6 (2024) (A)(C)(D)[2] by way of intentional inflectional [sic] of emotional distress, defamation, invasion of privacy, which led to pain, suffering, mental and emotional distress.

Response at 11-12 (emphasis added). Plaintiff's vague references to the Fifth Amended Complaint, which contains over 300 paragraphs, are not sufficient to establish a viable response. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

The Court dismisses Plaintiff's claims against APS pursuant to RICO for failure to state a claim. In addition to APS, Defendants in this case include state-court judges and other judicial officers involved in adjudicating a child custody case, CYFD case workers, a behavioral health

---

[2] N.M.S.A. § 30-42-6, Racketeering; civil remedies, provides: "A. A person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court. . . C. The district court has jurisdiction to prevent, restrain and remedy racketeering . . . by issuing appropriate orders. . . D. Following a determination of liability, such orders may include. . ."

agency and social workers specializing in the treatment of families, children and their caregivers, the children's father and his attorneys. The allegations in the Fifth Amended Complaint show that APS and the other Defendants were involved with matters regarding Plaintiff's children but do not plausibly allege facts showing that Defendants functioned as a continuing unit with a shared purpose to deprive Plaintiff of her rights through crimes that constitute racketeering activities.

**Count 8 – Neglect to Prevent**

Although not obvious, the Fifth Amended Complaint, liberally construed, asserts a claim pursuant to 42 U.S.C. § 1986, Action for neglect to prevent. In Count Eight, "Action for Neglect to Prevent," Plaintiff alleges Defendants "engaged in a concerted effort to make knowingly neglected to prevent the wrongs conspired to be done, having power or aid in preventing the commission of the same, neglected or refused to do so." [sic] Fifth Amended Complaint at 45. Plaintiff does not reference 42 U.S.C. § 1986 in Count Eight. Plaintiff does, however, reference 42 U.S.C. § 1986 41 pages previously in the "Jurisdiction" section of the Fifth Amended Complaint. *See* Fifth Amended Complaint at 4.

> 42 U.S.C. § 1986:
>
> provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and having power to prevent or aid ... neglects or refuses to do so." Hence, there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985. Santistevan and Herrera failed to establish a viable § 1985(1) cause of action. Thus, the district court properly dismissed their § 1986 claim. . .

*Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984).

APS states Count Eight fails to state a tort claim upon which relief may be granted and contends that Count Eight is barred by the New Mexico Tort Claims Act "because liability is not waived." Motion at 9. APS does not, however, address whether the Court should dismiss

Plaintiff's Section 1986 claim, apparently because Plaintiff did not reference Section 1986 in Count Eight.

In its Order Granting State Defendants' Motion to Dismiss, the Court dismissed Plaintiff's Section 1986 claims against the State Defendants because Plaintiff failed to establish a viable Section 1985 claim. *See* Doc. 173 at 18, filed September 19, 2025; State Defendants' Motion to Dismiss at 17, Doc. 115, filed February 17, 2025 (stating Plaintiff failed to state a conspiracy claim). The Court cannot apply that ruling to APS' Motion in the absence of briefing by the relevant parties. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ("A district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment. But we have stated that when a district court considers its own files and records in ruling on a Rule 12(b)(6) motion, [t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.") (citations and quotation marks omitted). The Court defers ruling on APS' Motion to dismiss Count Eight of the Fifth Amended Complaint and orders APS and Plaintiff to file supplemental briefs addressing Section 1986.

***Rooker-Feldman* Doctrine**

APS states "Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because Plaintiff's allegations relate to her being the non-prevailing party in her child custody dispute." Motion at 11. The Court discussed the relevant law regarding the *Rooker-Feldman* doctrine in its Order granting the State of New Mexico Defendants' Motion to Dismiss and incorporates that discussion by reference. *See* Mem. Op. and Order Granting State Defendants' Motion to Dismiss at 21-22, Doc. 173, filed September 19, 2025.

Plaintiff contends *Rooker-Feldman* does not bar her Fifth Amended Complaint. Plaintiff states APS is:

8

> [m]isleading the Court to believe that the complaint is a custody dispute, the Plaintiff requesting injunction relief to change or orders, violation occurred because of a state court order, and requesting a district court to review correctness of judgement but the return of the kidnapped two oldest minor children that have been held hostage. The Plaintiff is not claiming a legal error by the state court, she is claiming deprivation of rights, conspiring, RICO, and fraud upon the court by the opposing parties.
> . . . .
> The Plaintiff did seek appropriate relief through the state court system; however, the Plaintiff did not have equal access to justice, a fair hearing . . . the attempt to mislead the Court to believe that the Amended Complaint is a custody dispute fails and the Plaintiff wholly denies Defendant's misrepresentation and false statements including, "Plaintiff's[Fifth Amended Complaint] constitutes a direct attack on the state court's decision regarding custody of her children.["]

Response at 15-17.

The Court is not persuaded by Plaintiff's argument that *Rooker-Feldman* does not bar her civil rights claims. *See Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) ("Under [the *Rooker-Feldman*] doctrine, 'a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights'") (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). Plaintiff complains of injuries and violations of her rights resulting from state-court proceedings:

1. This is an action for relief brought pursuant to 42 U.S.C. 1983. . .

2. The Second District Court Domestic Relations, CYD, has an established and pervasive culture of corruption that has metastasized to certain judges, court appointees, attorneys, and "professionals" acting at their direction to defraud, tortiously injure, and deprive citizens of their constitutional rights for ill-gotten gains.
. . . .
4. The Judges, court appointees, and professionals working at the direction of the court appointees are engaged in a scheme spanning multiple years to destroy evidence, falsify evidence threaten, deprive constitutional rights, manipulate and provide false statements in multiple hearings and to multiple state regulatory agencies, while always seeking to further litigation.

9

Fifth Amended Complaint at 3. The Court is also not persuaded by Plaintiff's argument that she is not seeking to overturn state court orders. Plaintiff seeks the following relief:

1. An order declaring that the proceedings of the State Court herein identified, and all orders promulgated therefrom, are null and void and of no effect.

2. [A declaration] that the defendants have acted illegally and unconstitutionally in violating the Plaintiff's constitutional rights and liberties and have acted illegally and unconsciously and it is capricious and willful manner in hindering and preventing the Plaintiff's effort to bring action in Court.

3. Issue an emergency return order for two oldest minor Children mirroring aspects of Hague Convention for two older minor children held hostage for over 625 days by Defendant Billy Cobos and Jennifer Lopez and all law enforcement to aid in the return.

4. An order declaring that all Defendant[s]' acts or omissions, described herein, violated the 1st, 4th, 8th, and 14th Amendments to the United States Constitution.

Fifth Amended Complaint at 47 (also seeking compensatory and punitive damages).

Plaintiff's civil rights claims are barred by *Rooker-Feldman*. "[F]ederal claims that were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment." *Jakupovic v. Curran*, 850 F.3d 898, 902 (10th Cir. 2017). Plaintiff's claims are inextricably intertwined with the state-court proceedings and the relief Plaintiff seeks would undue state-court judgments.

**Plaintiff's Motion to Amend**

Plaintiff states she "believes that she has stated her claim against APS pursuant to" Section 1983 and:

Plaintiff has been forced to limit her Complaint to fifty (50) pages. The Plaintiff also has evidentiary support of factual allegation[s] made in the Fifth Amended Complaint. This includes discovery email, phone recordings, record proper, police reports, and other documentation.

10

Response at 2-3. Plaintiff also states "should this Court decide that Plaintiff's [sic] failed to properly plead, Plaintiff MOVE [sic] this Court to be lenient and allow her to Amend her complaint." Response at 17 (emphasis in original).

The Court denies Plaintiff's motion to file a sixth amended complaint. Although Rule 15(a)(2) of the Federal Rules of Civil Procedure states "[t]he court should freely give leave [to amend] when justice so requires:"

> whether to grant such leave "is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971). *Accord, Triplett v. Leflore County,* 712 F.2d 444, 446 (10th Cir.1983). "An outright refusal to grant leave without any justifying reason appearing for the denial" is an abuse of discretion, but there is no abuse if the court relies on a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment". *Foman v. Davis,* 371 U.S. 178, 182 (1962).

*First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132 (10th Cir. 1987). Despite notification by the Court of her obligations to comply with Court Orders and Rules, Plaintiff has delayed resolution of this case and caused the Court and the other Parties to needlessly expend valuable resources by repeatedly failing to comply with Court Orders and the Federal and Local Rules of Civil Procedure. *See* Order to Show Cause at 1-4, Doc. 141, filed May 8, 2025 (summarizing Plaintiff's abusive filing history in this case). Rule 1 of the Federal Rules of Civil Procedure requires the Court and the Parties to construe, administer and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. It appears that Plaintiff remains unwilling or unable to comply with Court Orders and the Federal and Local Rules of Civil Procedure. Plaintiff did not include a proposed sixth amended complaint with her motion to amend as required by the Local Rules. *See* D.N.M.LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend"). Consequently, the Court cannot determine whether amendment would be futile. Given Plaintiff's abusive filing history in this case, allowing Plaintiff to file a sixth amended complaint

11

will likely delay the resolution of this case and cause the Court and the other Parties to needlessly expend additional resources.

**IT IS ORDERED** that APS' Motion to Dismiss Plaintiff's Fifth Amended Complaint, Doc. 114, filed February 13, 2025, is **GRANTED in part** as follows: (i) Plaintiff's claims against APS in Counts One, Two and Three of the Fifth Amended Complaint are **DISMISSED with prejudice**; (ii) the Court defers ruling on Plaintiff's claims against APS in Counts Four through Eight; and (iii) APS shall, within 14 days of entry of this Order, file a supplementary brief addressing whether the Court should dismiss Plaintiff's claim pursuant to 42 U.S.C. § 1986. Plaintiff shall, within 14 days after service of APS' supplementary brief, file a supplementary response. Plaintiff may also file a motion for an extension of time in which to file her supplementary response.

s/_____
KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.